1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

# SOUTHERN DISTRICT OF CALIFORNIA

9

10   SAMUEL ROBINSON,

CASE NO. 11CV1021 JLS (RBB)

11                                    Plaintiff,

**ORDER (1) GRANTING MOTION TO COMPEL ARBITRATION AND (2) STAYING LAWSUIT PENDING COMPLETION OF ARBITRATION**

12         vs.

13   CRAIG ISAACS, et al.,

14                                    Defendants.

(ECF No. 3)

15

16         Presently before the Court is Defendants' motion to compel arbitration and an for order

17   staying lawsuit pending completion of arbitration.  (Mot. Compel Arbit., ECF No. 3) Also before

18   the Court is Plaintiff's opposition (Resp. in Opp'n, ECF No. 10), and Defendants' reply in support

19   (Reply in Supp., ECF No. 11).  For the reasons stated below, the Court **GRANTS**, Defendants'

20   motion to compel arbitration and **STAYS** the proceedings pending completion of arbitration.

21                                    **BACKGROUND**

22         In April 2005, eighty-four year old Plaintiff Samuel Robinson ("Robinson") inherited

23   approximately $3 million dollars.  (Compl. ¶ 9, ECF No. 1)  Upon receiving this inheritance,

24   Robinson was referred to Defendants Craig Isaacs ("Isaacs") and Nexus Wealth Management, Inc.

25   ("Nexus") for investment advice.  (*Id.* ¶¶ 8–9)  Isaacs is the Chief Executive Officer of Nexus, (*Id.*

26   ¶ 2), and is also an investment advisory representative of Geneos Wealth Management, Inc.

27   ("Geneos"), (Mot. Compel Arbit. 2, ECF No. 3).  On May 11, 2005, Isaacs, Robinson, and J.

28   Douglass Jennings met to "review, analyze and discuss plaintiff's estate planning, tax, corporate

- 1 -

and investment strategies."  (Compl. ¶ 12, ECF No. 1)  Based on Defendants' independent financial advice, "on May 16, 2005, plaintiff invested $500,000.00 in Investments of Jackson Hole, LLC, a company formed by Jennings to acquire parcels of real property in Teton County, Jackson Hole, Wyoming," (*Id.* ¶ 19), and "on May 18, 2005, plaintiff invested $500,000.00 in La Jolla Equities Income Fund I, a business entity over which Jennings exerted complete control," (*Id.* ¶ 16).

Soon after making these investments, on May 26, 2005, Plaintiff and Isaacs signed a Geneos "New Account Application" contract, which included an arbitration provision.  (Mot. Compel Arbit. 4, ECF No. 3); (May, 26, 2005 New Account Application, Ex. D, ECF No. 4-2) Three additional New Account Application contracts—all containing identical arbitration agreements—were signed by Plaintiff and Isaacs on May 27, 2005, August 2, 2005, and September 27, 2006.  (Mot. Compel Arbit. 4, ECF No. 3)  On September 28, 2006, Plaintiff and Isaacs signed a Geneos "Advisory Services Contract," containing a similar arbitration provision. (*Id.*)  Subsequently, in March 2008 Plaintiff again invested in La Jolla Equities Income Fund I, also based on Defendants' "'independent' financial advice and recommendations."  (Compl. ¶ 17, ECF No. 1)

On March 29, 2011, Robinson filed the present action for negligence and breach of fiduciary duty against Defendants in San Diego Superior Court, and on May 10, 2011, Defendants removed the case pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (ECF No. 1)  On May 25, 2011, Defendants filed the instant motion to stay this case and compel arbitration.  (Mot. Compel Arbit., ECF No. 3)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving transactions in interstate commerce. *See* 9 U.S.C. § 1, et seq.; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991).  The FAA provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2.  If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration.  *Id.* § 4.  The FAA reflects a "liberal federal policy favoring arbitration agreements."  *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  As such, the FAA "requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986).

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, a district court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). In construing the terms of an agreement, the Court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

If the district court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the court to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  Therefore, a district court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation*, 363 U.S. 574, 582–83 (1960).

//

//

//

//

//

//

1

**ANALYSIS**

2 **1. Existence of an Arbitration Provision**

3       Ordering the parties to a case to arbitration requires that those parties have contractually

4 agreed to settle disputes through arbitration. 9 U.S.C. § 2. Defendants point to five contracts

5 signed by Robinson that contain arbitration agreements. (Mot. in Opp'n 3–4, ECF No. 3); (May,

6 26, 2005 New Account Application, Ex. D, ECF No. 4-2); (May 27, 2005 New Account

7 Application, Ex. E, ECF No. 4-3); (Aug. 2, 2005, New Account Application, Ex. F, ECF No. 4-4);

8 (Sept. 27, 2006, New Account Application, Ex. G, ECF No. 4-5); (Sept. 28, 2006, Advisory

9 Services Contract, Ex. H, ECF No. 4-6) These contracts are between Robinson and Geneos,

10 signed by Defendant Isaacs. Defendant Nexus is not a signatory to any of the five contracts.

11 Thus, a "threshold issue is whether [Nexus], not a party to the contracts containing the arbitration

12 clauses, may compel arbitration under the contracts." *Lorber Indus. of Cal. v. L.A. Printworks*

13 *Corp.*, 803 F.2d 523, 525 (9th Cir. 1986).[1]

14       "Arbitration, however favored by the courts and Congress, is a contractual right, and may

15 not be invoked by one who is not a party to the agreement and does not otherwise possess the right

16 to compel arbitration." *Id.* "'[N]onsignatories of arbitration agreements may be bound by the

17 agreement under ordinary contract and agency principles.'" *Comer v. Micor, Inc.*, 436 F.3d 1098,

18 1101 (9th Cir. 2006) (quoting *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187–88 (9th

19 Cir. 1986)). Nonsignatories can also enforce arbitration agreements as third party beneficiaries.

20 *Id.* (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269

21 F.3d 187, 195 (3rd Cir. 2001)). Courts have used equitable estoppel to allow third parties to bind

22 signatories when there is a "close relationship between the entities involved, as well as the alleged

23 wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the

24 ───────────────

25       [1]The ability of Nexus to enforce the arbitration agreement does not impact enforceability as
between Robinson and Isaacs, the signatories to the agreements. As the Supreme Court stated in
26 *Moses H. Cone Memorial Hospital*, "Federal law *requires* piecemeal resolution when necessary to
give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be
27 enforced notwithstanding the presence of other persons who are parties to the underlying dispute but
not to the arbitration agreement." 460 U.S. at 20 (footnote omitted); *see also Fisher*, 791 F.2d at 698
28 (requiring "district courts to compel arbitration even where the result would be the possibly inefficient
maintenance of separate proceedings in different forums"). In such a case, the district court may "stay
litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone
Mem'l Hosp.*, 460 U.S. at 20 n.23.

claims were intimately founded in and intertwined with the underlying contract obligations." *E.I. DuPont de Nemours*, 269 F.3d at 201 (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 778 (2nd Cir. 1995)); *see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993). This prevents a signatory from "'hav[ing] it both ways': . . . on the one hand, seek[ing] to hold the non-signatory liable pursuant to the duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny[ing] arbitration's applicability because the defendant is a non-signatory. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)).

Although Robinson makes no reference to any of the contracts containing arbitration provisions in his complaint, his claims of negligence and breach of fiduciary duty are based on the "business relationship [that] existed between plaintiff and defendants Isaacs and Nexus" "[s]ince May 2005, and continuously thereafter." (Compl. ¶ 24, ECF No. 1) That business relationship was established by Robinson's signing the New Account Application contract in 2005, and continued through 2008 by his signing the subsequent New Account Application contracts and the Advisory Services Contract. For this reason, this Court finds that Nexus can compel arbitration despite not being a signatory to the contract. Robinson cannot "have it both ways;" he cannot file claims against Nexus on the basis of an agreement that contains an arbitration provision, but simultaneously deny Nexus the ability to enforce the arbitration provision of that agreement.

Moreover, Robinson's allegations against Nexus and Isaacs go hand in hand, as acknowledged by Robinson in his complaint: "Plaintiff understood that Isaacs, through Nexus, was acting as the 'independent' financial adviser." (*Id.* ¶ 13) None of the claims against Nexus are independent of the claims against Isaacs, as "Nexus . . . only acted at all with Plaintiff . . . through [Isaacs]." (Decl. Isaacs ¶ 2, ECF No. 11-1) Every reference to the allegedly faulty investment advice in the complaint refers to the defendants acting in concert in issuing that advice. (*See* Compl., ECF No. 1) Thus, given the close relationship between the entities involved and the equitable principles discussed above, this Court finds that Nexus may enforce the arbitration agreement despite not being a signatory to the agreement.

//

**2. Scope of the Arbitration Provision**

Next, the Court looks to determine "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119 (citing *Chiron Corp.*, 207 F.3d at 1130). In doing so, the Court must keep in mind that the FAA requires it to "rigorously enforce agreements to arbitrate" and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

The Court will examine the two contractual arbitration provisions separately.

***A. New Account Application Arbitration Provision***

The arbitration provisions signed by Robinson in the "New Account Application" read:

> It is agreed that any controversy between us, including but not limited to any controversy about arbitrability, arising out of your business or this agreement shall be submitted to arbitration conducted before the National Association of Securities Dealers, Inc. and in accordance with its rules. Arbitration must be commenced by service upon the other party of a written demand for arbitration or a written notice of intention to arbitrate.

(May, 26, 2005 New Account Application, Ex. D, ECF No. 4-2); (May 27, 2005 New Account Application, Ex. E, ECF No. 4-3); (Aug. 2, 2005, New Account Application, Ex. F, ECF No. 4-4); (Sept. 27, 2006, New Account Application, Ex. G, ECF No. 4-5)[2]

Robinson filed suit against Defendants for negligence and breach of fiduciary duty claiming that Defendants gave him faulty financial advice, resulting in "damages, the full extent of which are unknown." (Compl. ¶ 29, ECF No. 1) Defendants' argument that the arbitration provisions in the four New Account Application contracts apply to the complained of investments fails for two reasons.

First, each of the four New Account Application contracts signed by Robinson postdated the complained of investments. Robinson invested $500,000 in both Jackson Hole, LLC and La Jolla Equities Income Fund I on May 16, 2005 and May 18, 2005, respectively. (Compl. ¶¶ 16, 19, ECF No. 1) The first of the New Account Application contracts was not signed by the parties until May 26, 2005, however. (Mot. Compel Arbit. 4, ECF No. 3) Thus, Robinson did not sign

---

[2]The National Association of Securities Dealers, Inc. has since been replaced, under SEC approval and authority, with the Financial Industry Regulatory Authority. *See* Press Release, FINRA, NASD, and NYSE Member Regulation Combine to Form the Financial Industry Regulation Authority—FINRA (July 30, 2007), http://www.finra.org/Newsroom/NewsReleases/2007/P036329.

1   any contract containing an arbitration agreement until after he had already invested $1 million on

2   the basis of Defendants' investment advice, and consequently those investments cannot be said to

3   be encompassed by the postdated arbitration agreements.

4          Second, even if the New Account Application contracts are not deemed to have postdated

5   Robinson's initial investments in Jackson Hole, LLC and La Jolla Equties Income Fund I,[3] this

6   Court finds that the present dispute is outside the scope of the agreement.  Where arbitration

7   clauses are limited to disputes "arising out of" an agreement, as here, courts have described them

8   as "'relatively narrow as arbitration clauses go.'"  *Mediterranean Enters. v. Ssangyong Corp.*, 708

9   F.2d 1458, 1464 (9th Cir. 1983) (citation omitted).  As such, the Court must find that Plaintiff's

10  claim regarding Defendants' faulty investment advice falls outside the scope of the agreement.

11         The terms of the New Account Application contract indicate Defendants' investment

12  advice to Robinson was not a part of the business with Geneos.  Specifically, the same forms that

13  contain the arbitration agreement also read: "I understand that [Geneos] provides no tax, legal, or

14  *investment advisory services* unless such investment advisory services are independently

15  contracted under an Advisory Services Agreement or Client Services Agreement."  (May, 26, 2005

16  New Account Application, Ex. D, ECF No. 4-2); (May 27, 2005 New Account Application, Ex. E,

17  ECF No. 4-3); (Aug. 2, 2005, New Account Application, Ex. F, ECF No. 4-4); (Sept. 27, 2006,

18  New Account Application, Ex. G, ECF No. 4-5) (emphasis added)  As this Court held with regard

19  to an almost identical disclaimer provision in *Verducci v. Coda*, 743 F.Supp.2d 1182, 1188 (S.D.

20  Cal. 2010), "[g]iven that [Geneos] made a specific disclaimer of giving tax, legal, and investment

21  advice, any such advice given by Defendant[s] . . . could not possibly have arisen out of the

22  relevant agreements."

23         Due to the fact that Defendants' allegedly negligent investment advice could not have been

24  provided as a part of its services under the Geneos New Account Application contract, the Court

25  finds that this dispute does not fall within the scope of the New Account Application contract's

26  arbitration agreement.

27

28         [3]Given the short time between the initial investments on May 16 and 18, 2005, and the signing
of the New Account Applications contracts on May 26, 2005, Plaintiff acknowledges that the contracts
are "arguably contemporaneous" with the initial investments.  (Mot. in Opp'n 8, ECF No. 10)

*B. Advisory Services Contract Arbitration Provision*

The arbitration provision signed by Robinson in the "Advisory Services Contract" read:

All disputes involving this Agreement will be resolved through Arbitration. Arbitration will be conducted through the facilities of the NASD Arbitration Association. The arbitration panel shall determine the site of arbitration. Any party may initiate arbitration by mailing a written notice to the other parties. Any award the arbitration panel makes will be final, and any court having jurisdiction may enter judgment on it. This arbitration provision does not constitute a waive of any rights Client is specifically granted by applicable law.

(Sept. 28, 2006, Advisory Services Contract, Ex. H, ECF No. 4-6)  The Advisory Services Contract was not signed until September 28, 2006, unquestionably postdating Robinson's May 2005 investments.  Adhering to the liberal policy favoring arbitration agreements, however, the Court must find that the Advisory Services Contract arbitration provision encompasses the 2005 investments, despite the fact that it was not signed until over one year later.

Unlike the New Account Application, the Advisory Services Contract explicitly states that the parties are contracting for investment advice, including "an analysis of appropriate investments, and appropriate adjustments to *existing investments*." (*Id.* at 4 (emphasis added))  The 2005 complained of investments were "existing" at the time Plaintiff entered into the Advisory Services Contract. (*See* April 5, 2009, Investment Review 7, Ex. J, ECF No. 11-2 (listing both the Jackson Hole, LLC and La Jolla Equities Income Fund I investments in a summary of Plaintiff's portfolio holdings))  Because the contract applies to investment advice with regard to both future and past investments, this Court finds that the contract encompasses Defendants' investment advice with regard to the preexisting 2005 investments as well as the later 2008 investment, and therefore Plaintiff's claims are within the scope of the arbitration agreement contained in that contract, and the Court must **GRANT** Defendants' motion to compel arbitration.

**3. Stay the Proceeding**

Pursuant to 9 U.S.C. § 3, the Court may order a stay "pending compliance with a contractual arbitration clause." *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978).  The FAA provides,

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration

11cv1021

has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Accordingly, there are two prerequisites to granting a stay order: (1) the issue is referable to arbitration under an agreement in writing for such arbitration; and (2) the applicant for the stay is not in default in proceeding with such arbitration.  *See id.*

As noted above, the arbitration provision of the Advisory Services Contract provides for arbitration of disputes involving that agreement.  Thus, the first requirement is met.

As to the second requirement, Defendants are the applicants for the stay.  (Mot. Compel Arbit., ECF No. 3)  Nothing suggests that Defendants are in default in proceeding with such arbitration.  *See Saint Agnes Med. Ctr. v. PacifiCare*, 31 Cal. 4th 1187, 1195 (2003) (finding that although the "'principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred'" (citation omitted)).  Given the strong federal policy favoring arbitration, the Court **GRANTS** Defendants' request and **STAYS** the case pending completion of the arbitration.

## CONCLUSION

For the reasons stated above, the Court finds that (1) both Defendants may enforce the arbitration agreement, and (2) the claims brought in this suit are within the scope of the arbitration agreement contained in the Advisory Services Contract.  Therefore, the Court **GRANTS** Defendants' motion to compel arbitration.  The parties **SHALL SUBMIT** Plaintiff's claims to arbitration under the terms of the Advisory Services Contract arbitration agreement.  Within <u>thirty (30) days</u> of the completion of arbitration, Defendant **SHALL FILE** a notice of said completion with the Court.  The Court **STAYS** this action pending the outcome of the arbitration.

**IT IS SO ORDERED.**

DATED:  October 12, 2011

Janis L. Sammartino
Honorable Janis L. Sammartino
United States District Judge

11cv1021